# COURT OF APPEALS OF TEXAS.

## AUSTIN TERM, 1885.

### [No. 3353.]

### GEORGE TIMBROOK *v.* THE STATE.

1. EVIDENCE — ADMISSIBILITY OF WRITTEN INSTRUMENTS — PRACTICE.— Record-able written instruments are admissible in evidence without the filing and notice provided for by article 2257 of the Revised Statutes, but when so offered their execution must be proved. It is only when such instruments are offered without proof of execution that the filing and notice are neces-sary to their admissibility.

2. THEFT — EVIDENCE.— In a trial for the theft of a cow alleged to be the prop-erty of one Helton, it was in proof that he purchased the animal from one O., and the State, over objection by the defense, was allowed to prove by Helton that the brand which was on the cow was O S M, which brand was proved by the record of marks and brands to be the brand of said O. The objection was that the proof was immaterial, and that the record was the proper evidence. *Held,* that the testimony was competent because it tended to identify the animal in question as one of several which the said Helton had purchased from said O. by a bill of sale, in which the cattle were de-scribed by said brand O S M.

3. SAME.— No particular form is prescribed by law for the certificate of a magis-trate to testimony taken before him as an examining court. Substantial compliance with the statutory requirements is sufficient. Note, in illustra-tion, a certificate *held* sufficient to manifest that, when the testimony at an examining trial was taken, the defendant was present and was accorded the right to cross-examine the State's witnesses; wherefore, at the subsequent trial of the defendant under indictment, testimony so taken was properly admitted upon proof that the witness was then beyond the limits of this State.

4. SAME — PRACTICE IN THE COURT OF APPEALS.— Discretionary authority is conferred upon trial judges to admit evidence after the commencement of the argument to the jury, and the exercise of that discretion will not be re-vised on appeal unless an abuse of it clearly appears.

5. CONTINUANCE — PRACTICE.— An application for a continuance on account of the absence of a witness must show sufficient diligence to enforce the at-tendance of the witness, or a good excuse for want of such diligence; and the allegations of the application must be definite and certain. And the ap-plication must also state, as required by article 560 of the Code of Procedure, that there is no reasonable expectation of obtaining the attendance of the witness at the current term of the court by postponing the trial to a future day thereof.

VOL. XVIII — 1

6. ACCOMPLICE TESTIMONY — CHARGE OF THE COURT.—When the evidence makes it incumbent upon the trial judge to give in charge to the jury the law controlling the inculpatory testimony of accomplice witnesses, it is erroneous to instruct them that the witness must be an accomplice as technically defined by articles 79 and 80 of the Penal Code. The charge should expound the word *accomplice* in conformity with its signification as used in article 741 of the Code of Criminal Procedure. Nevertheless, to make an erroneous charge on this subject available on appeal, it must be duly excepted to, or a correct charge be requested, or the attention of the trial judge be called to the error in the motion for a new trial.

7. CATTLE-THEFT — FACT CASE.— See evidence *held* sufficient to sustain a conviction for cattle-theft.

APPEAL from the District Court of Wise. Tried below before W. H. Bullock, Esq., Special Judge.

The conviction in this case was for the theft of a heifer, the property of W. B. Helton, in Wise county, Texas, on the 2d day of September, 1884. A term of two years in the penitentiary was the penalty assessed by the jury.

W. B. Helton was the first witness for the State. He testified that he never consented that the defendant should take any of his cattle, and he did not know of his own knowledge that he had ever lost any cattle. The bill of sale to witness, from Osman, the witness himself saw Osman sign. Witness bought from Osman all cattle in the O S M brand. Over the objection of the defendant the State read the following bill of sale:

"THE STATE OF TEXAS, }
    *County of Wise.*   }

"Know all men by these presents that I, C. L. Osman of the county of Wise and State of Texas, for and in consideration of $300 to me in hand paid by W. B. Helton, the receipt whereof is hereby acknowledged, have bargained, sold and delivered, and do by these presents bargain, sell and deliver, unto the said W. B. Helton, his heirs, legal representatives and assigns, all cattle in various marks in the following brands, to wit: O S M, O S M under a horizontal bar, T F J, and T F J under a horizontal bar; all cattle in these brands in the counties of Wise, Parker and Jack, and I do, for myself, heirs and assigns, and legal representatives, covenant to and with the said W. B. Helton, his heirs, legal representatives and assigns, to warrant and defend the said property before mentioned against all and every person or persons whomsoever.

"Witness my hand at Decatur this 20th day of August.

                              "C. L. OSMAN."

This bill of sale was acknowledged before Jno. W. Hogg, clerk of the county court of Wise county.

Jo Ferguson was the next witness for the State. He testified that he knew a certain two-year old black heifer, which, judging from the brand O S M, belonged to Osman. This heifer ran on the range near Mrs. Greenup's, on the Coston farm, in Wise county. Witness saw a hide at Eldorado on the day of the examining trial of this defendant. By the color and the brand he recognized that as the hide of the animal described.

James Murphy was the next witness for the 'State. He testified that on or about the 1st day of September, which was a day or two after the heifer was said to have been killed at Greenup's, he found a hide near the road which passed near his house on Martin's branch. From its appearance the witness thought this hide came off a two-year-old heifer. It was a black hide, branded O S M. It appeared to have been removed from the animal a day or two before. It was nearly covered up, only a small portion of it being visible above ground. Witness, on discovering the hide, called George Phillips, who was working near by, and they examined the hide together. The witness next saw the hide at the examining trial of the defendant at Eldorado.

Tom Coston testified, for the State, that a two-year-old black heifer, branded O S M, had been running on the range in Wise county about the Coston farm, where the defendant and the Greenups lived when this offense is alleged to have been committed. She was missing about the 1st of September, when she was said to have been killed at Greenup's.

The State next read in evidence the testimony of John McAnally, taken on the examining trial, in substance as follows: The witness, with Childress, Jodie, Mary Jane Greenup and defendant, lived in the house with "Grandmother" Greenup, in Wise county. On Monday night, a week prior to the examining trial, the defendant killed a black two-year-old heifer branded O S M. Witness, Jodie, Mary Jane and "Grandmother" Greenup were at home at the time. Defendant came to witness's bed between 10 and 11 o'clock, and told witness he had killed the heifer, and asked witness to help him skin it. Witness declined. Defendant came the third time and asked him, saying that unless the animal was skinned and disposed of before daylight, "Grandmother" would be charged with the theft. Witness then went and helped skin it. When butchered, the defendant gave one quarter of the beef to "Grandmother" Greenup, and took the other three quarters to Decatur with "Grandmother's" horses in Mr. Coston's wagon. Witness went with defendant, leaving home about one hour before day. They took the

hide as far as Martin's branch, and secreted it.   They took the beef
to Decatur, but, being unable to sell it, started back with it, selling
two quarters on the road.   Defendant said it would never do to take
the remaining quarter back, but did so, and gave it to "Grand-
mother" Greenup.   Bob Simpson, Childress and "Grandmother"
Greenup, on the next day, took one quarter to Mr. Brown's, where
they were picking cotton.   Defendant told "Grandmother"
Greenup, before he killed the animal, that he was out of tobacco,
and was going to kill some man's beef to get money to supply him-
self with tobacco.

Mrs. M. A. Greenup's testimony before the examining court reads,
in substance, as follows:   For some time witness had lived in the
same house with defendant, Childress, Jodie and Mary Jane Greenup,
and John McAnally.   On Monday night, a week prior to the ex-
amining trial, defendant killed a black two-year old heifer in wit-
ness's lot.   The beef was killed and butchered before day.   One
quarter was left with witness, three quarters were taken to Decatur
by defendant and McAnally, two of which were sold, and one
brought back.   One of these quarters was carried by Bob Simpson
and Childress Greenup to Mr. Brown's on Hog Branch, where they
were picking cotton.   Witness told Childress and Bob Simpson that
the defendant had killed a beef.   She told Mrs. Brown, also, but did
not tell her that defendant stole the animal.   It was a notorious
fact in the neighborhood that defendant owned neither a beef nor
anything else.

A. J. Coston testified that, at the time of this trial, the witnesses
John McAnally and Mrs. M. A. Greenup, whose written testimony
was read, were beyond the limits of the State of Texas.

By the record of marks and brands, Osman's brands were proved
as set out in his bill of sale to Helton.

After the conclusion of the argument for the defense, the court
permitted the State to prove by Buck Donaldson that, on or about
the 1st of September, 1884, and about the time the heifer was
alleged to have been killed at Greenup's, witness saw the defendant,
a young man and a young lady pass his house in a wagon going to-
wards Decatur.   He noticed that something in the wagon was cov-
ered with a sheet, and noticing blood spots of blood, supposed the
article covered was beef.   Defendant, saying he was going to
Decatur, consented to take witness's valise for him.   This was about
sun up.   About 9 o'clock on the same morning, passing back, de-
fendant and his companions stopped at witness's house and proposed
to sell witness some beef, from (as defendant said) a two-year-old

Opinion of the court.

animal, for three or four cents per pound. Beef was then selling at five and six cents. Witness, having that day bought beef, declined to purchase. A few days later witness saw the defendant on his examining trial at Eldorado.

That previous to this charge this defendant bore a good character for honesty, and that John McAnally was a youth, but sixteen years old, was testified by Frances Lard, a witness for the defense.

The motion for new trial raised the questions discussed in the opinion.

*W. H. Hodges* and *W. D. Gose,* for the appellant.

*J. H. Burts,* Assistant Attorney-General, for the State.

Willson, Judge. I. It was not error to admit in evidence the bill of sale from Osman to Helton, as its execution was proved by the testimony of Helton. Where the execution of an instrument of writing permitted or required by law to be recorded is proved when it is offered in evidence, the filing and notice required by article 2257 of the Revised Statutes is not required. It is only where such instruments are offered in evidence without proof of execution, that such filing and notice are required to render them admissible.

II. It was not error to allow the witness Helton to testify as to the brand that was on the cattle he purchased from Osman. This evidence tended to identify the animal alleged to have been stolen as one of the animals conveyed by Osman to Helton by the bill of sale, which bill of sale described the cattle conveyed as branded O S M, this being the brand of Osman as shown by the record of his brand, which was read in evidence by the State.

III. It was not error to admit in evidence the testimony of John McAnally and M. A. Greenup taken before an examining court. It was shown that said witnesses were beyond the limits of this State. It appears sufficiently from the certificate of the magistrate accompanying this testimony that when the same was taken the defendant was present, and had the privilege afforded him of cross-examining said witnesses. No particular form is prescribed by the law for the certificate of the magistrate to testimony taken before him as an examining court. We think the transcript of the magistrate in this case, considered in connection with the written testimony of the witnesses, shows a substantial and sufficient compliance with the law. (Code Crim. Proc., arts. 267, 772, 773, 774; *Evans v. The State,* 13 Texas Ct. App., 225.)

IV. It was within the discretion of the trial judge to admit testimony offered by the State after the argument of the cause had commenced, and the exercise of such discretion will not be revised by this court unless it clearly appears that such discretion has been abused. (Code Crim. Proc., art. 661; *Nolen* v. *The State*, 14 Texas Ct. App., 474, and cases therein cited.) In this case the discretion confided by law to the trial judge was not abused.

V. It was not error to overrule defendant's application for a continuance. It failed to show sufficient diligence used to obtain the testimony of the absent witnesses, or sufficient excuse for not using diligence. It was uncertain and indefinite in its statements as to the diligence used. Furthermore, it failed to state, as required by the statute, that there was no reasonable expectation that the attendance of said witnesses could be secured during that term of the court by a postponement of the trial to some future day of said term. (Code Crim. Proc., art. 560; *Strickland* v. *The State*, 13 Texas Ct. App., 364.)

VI. This conviction rests mainly upon the testimony of the two witnesses McAnally and Greenup. Without their testimony the criminative facts proved would be wholly insufficient to support the verdict and judgment. As to the witness McAnally, there can be no question but that he was an accomplice in the theft of the animal, if in fact there was a theft committed by defendant. When we use the word *accomplice* in this connection, we do not mean that he was an accomplice as defined by articles 79 and 80 of the Penal Code, but that he was an accomplice within the meaning of that word as used in article 741 of the Code of Criminal Procedure. (*Smith* v. *The State*, 13 Texas Ct. App., 507; *House* v. *The State*, 16 Texas Ct. App., 25; *Howell* v. *The State*, Id., 93; *Zollicoffer* v. *The State*, Id., 312.) There was also evidence which tended strongly to show that the witness Greenup was likewise an accomplice within the meaning of said article 741. By the charge of the court the jury were instructed as to the meaning of accomplice as technically understood, that is, as defined by articles 79 and 80 of the Penal Code, and that a conviction could not be had upon the testimony of such an accomplice or accomplices unless corroborated, etc. This charge was erroneous and insufficient, and had the same been excepted to, or a correct charge been requested, or had the error been called to the attention of the trial court in a motion for a new trial, or had the court omitted any charge whatever as to accomplice testimony, we would feel called upon to set aside the conviction; but the defendant seems to have been entirely satisfied with the charge

of the court, and has urged no objections whatever to it, either in this or the trial court, and therefore the error we have mentioned in the charge is not sufficient ground for reversal. (*Burke* v. *The State*, 15 Texas Ct. App., 156.)

VII. While the principal evidence upon which this conviction was obtained is of a questionable character, and meagrely corroborated, still it is, if believed, legally sufficient to warrant the conviction; and the jury by their verdict have said that the testimony was credible, and this court cannot invade the province of the jury and pronounce it otherwise.

We find no error for which the conviction should be set aside, and the judgment is affirmed.

*Affirmed.*

[Opinion delivered April 18, 1885.]